# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TANYA A. McCLAIN, | ) |
| Plaintiff, | ) ) ) |
| v. | )  Civil Action No. 09-317-GMS |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM**

### I. INTRODUCTION

This action arises from the denial of Tanya McClain's ("McClain") claim for Social Security disability benefits. McClain applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") on September 9, 2005. 42 U.S.C. §§ 401-33. In her application and disability report, McClain claimed that she became disabled by multiple sclerosis ("MS") on May 10, 2005. (D.I. 12 at 56-58, 109, 512.) After the Delaware Disability Determination Service denied her application, McClain requested a hearing before an Administrative Law Judge (the "ALJ"). (*Id.* at 26, 33-47.) Following the hearing held on February 6, 2008, the ALJ issued a written opinion on April 3, 2008, denying McClain's application for DIB. (*Id.* at 21.) McClain requested a review of the ALJ's decision by the Social Security Appeals Council, which denied review. (*Id.* at 4-7E.) On April 29, 2009, McClain filed a timely appeal with this court. (D.I. 2.) Currently before this court are the parties' cross-motions for summary judgment. Because the court finds that the ALJ's decision meets the substantial evidence test established by 42 U.S.C. § 405(g), it will deny McClain's motion for

summary judgment, grant the Commissioner's motion for summary judgment, and affirm the decision of the ALJ.

## II. BACKGROUND

McClain was born on November 5, 1971 and was thirty-three years old when she filed for DIB on September 9, 2005. (D.I. 12 at 22, 56-58.) McClain's claims primarily stem from her MS, however, obesity and depression have also been noted as severe impairments. (*Id.* at 13.) To be eligible for DIB, McClain must demonstrate that she is disabled within the meaning of §§ 216(i) and 223(d). (*Id.* at 11.)

### A. Medical Evidence

To support her claim, McClain produced her medical records regarding her conditions. The court will summarize these records.

#### 1. Dr. Bruce Dopler

McClain was diagnosed with MS following an MRI on May 13, 2005. (*Id.* at 178, 313.) On that same day, McClain began seeing her first treating neurologist, Dr. Bruce Dopler ("Dr. Dopler") at the Neurology Center of South Delaware. (*Id.* at 221-28.) During McClain's final visit on October 19, 2005, Dr. Dopler conducted multiple examinations. (*Id.* at 221-23.) Examination of her mental status showed that McClain had normal orientation, memory, concentration, language skills, visual-spacial functions, and list generation skills. (*Id.* at 221.) Dr. Dopler also observed that McClain's cranial nerves, motor, sensation, coordination, reflexes, and gait were normal. (*Id.*) Dr. Dopler did, however, find "bilateral median neuropathy at the wrist with greater involvement of the right median nerve." (*Id.* at 223.) To address McClain's

medical ailments of MS and median neuropathy, Dr. Dopler recommended that she continue to take Rebif,[1] vitamin B6, and wear her wrist splint. (*Id.* at 221.)

        2.      Dr. Robert Baumann

In search of a different opinion, on May 19, 2006, McClain began seeing her second treating neurologist, Dr. Robert Baumann, D.O. ("Dr. Baumann"). (*Id.* at 295-96.) During the initial office consultation, Dr. Baumann noted that some of McClain's symptoms were consistent with MS, but he found that the supportive laboratory data was not highly suggestive of MS. (*Id.*) In fact, he noted "[r]ule out multiple sclerosis." (*Id.* at 295.) After obtaining all of the past records from a previous hospitalization during a follow-up visit, however, Dr. Baumann was able to conclude on June 30, 2006 that McClain had MS. (*Id.* at 292.) Despite this diagnosis, he noted that her "lesion load" was minimal. (*Id.*) Dr. Baumann recommended Solu-Medrol IV injections every three months for treatment. (*Id.* at 291.)

Dr. Baumann's most recent evaluation of McClain occurred on July 30, 2007. (*Id.* at 15, 441-42.) During this visit, McClain noted that Solu-Medrol initially was effective in reducing her pain, but the pain relief did not last for the entire three months. (*Id.* at 15, 441.) She also said that she fell four times during the month of June, however she was unsure if the falls were caused by loss of balance or tripping. (*Id.*) Dr. Baumann observed that her condition remained unchanged and she exhibited normal speech, sight, motor function, coordination, and gait. (*Id.*) Dr. Baumann concluded that "[t]he patient's condition objectively is stable. I see no evidence of any

---

[1] Rebif is used to prevent symptoms and slow the development of MS. McClain had been taking Rebif since she was diagnosed with MS in 2005. (*Id.* at 14.)

new neurologic signs or signs of progressive MS." (*Id.*) He recommended another MRI of McClain's brain. (*Id.*) On August 17, 2207, when reviewing the August 7, 2007 MRI, Dr. Baumann found "no significant white matter abnormalities." (*Id.* at 440.)

### 3. Dr. Lynn Mary Romano

McClain also relies on the conclusions of her primary care physician Lynn Mary Romano, M.D. ("Dr. Romano"). (*Id.* at 348, 356.) On September 21, 2005, Dr. Romano diagnosed McClain with MS and found that she was disabled. (*Id.* at 356.) Dr. Romano also came to the same conclusions on March 7, 2007, when she completed a long-term disability form at the request of McClain's insurance company. (*Id.* at 348.) Regarding McClain's anxiety, Dr. Romano noted on November 15, 2007 that Xanax was useful in stabilizing her condition. (*Id.* at 486.)

Two other physicians confirmed McClain's depression and noted that it was effectively controlled by medication. While McClain used Prozac to initially address her depression, her gynecologist switched her to Wellbutrin following her hysterectomy on August 4, 2005. (*Id.* at 185-208.) An examination by Dr. Borislav S. Antonov on August 7, 2007 at Nanticoke Memorial Hospital in Seaford, Delaware, found that McClain's depression was stable while taking Zoloft. (*Id.* at 411-12.)

### 4. Dr. Joseph B. Keyes

McClain underwent a clinical psychological evaluation by Joseph B. Keyes, Ph.D. ("Dr. Keyes") of the Delaware Disability Determination Service. (*Id.* at 271-76.) Based on his evaluation, Dr. Keyes concluded that McClain fell within normal limits, although he noted her self-esteem and social skills were low. (*Id.* at 273.) Most

4

notably, Dr. Keyes found that "Ms. McClain is capable of performing self care skills and routine activities of daily living[]" and she had a global assessment function ("GAF") score of 60 - 65.[2] (*Id.*) When analyzing her functional capabilities, Dr. Keyes found that she had, at best, mild to moderate impairments in some areas of the assessment.[3] (*Id.* at 275). Similarity, Dr. Keyes determined that McClain had only some mild to moderate impairments when functioning within the competitive labor-market setting. (*Id.* at 276.)

## B. Hearing Testimony

### 1. Testimony of Tanya Ann McClain (514-539)

At the time of the hearing on February 6, 2008, McClain was thirty-six years old. (*Id.* at 514.) She stated that she has a high school education and has worked in the past as a hospital dietary aid and food services worker. (*Id.* at 515.) Currently, McClain's husband is employed and provides for the family. (*Id.* at 534.) McClain has not done any work for pay since her diagnosis of MS, however, she is a mother of three children, ages three, nine, and thirteen at the time of the hearing. (*Id.* at 515-18.) McClain's oldest child is home schooled. (*Id.* at 521.) That child helps in the care of

---

[2] The GAF scale ranges from zero to 100. A score of 51-60 corresponds to "moderate symptoms." A score of 61-70 corresponds to "some mild symptoms." Diagnostic And Statistical Manual of Mental Disorders, Fourth Edition

[3] Dr. Keyes relied on the following definitions when rating McClain's impairments:
  None: no impairment in this area
  Mild: suspected impairment of slight importance which does not affect ability to function
  Moderate: an impairment which affects but *does not preclude* ability to function.
  Moderately Severe: an impairment which *seriously affects* ability to function
  Severe: extreme impairment of ability to function.
*Id.* at 276 (emphasis added).

5

her three-year-old sister, cooks for the family, and assists with other household chores. (*Id.* at 533.) In a typical day, McClain cares for her three-year-old most days and gets her nine-year-old ready for school and also helps her with homework. (*Id.* at 534.) However, she experiences extreme fatigue, which requires two to three-hour naps on a daily basis. (*Id.* at 536.) McClain also stated that she could drive short distances, prepare food for herself, and perform family and personal chores with some help from her family. (*Id.* at 530-34.) Regarding activities outside of the home, McClain noted that she played bingo once a week, would attend church services when she felt like it, ate out at restaurants occasionally, and recently went on a vacation with her family at Busch Gardens. (*Id.* at 532-34.)

### 2. Testimony of Louis Szollosy

Louis Szollosy ("Szollosy"), the assigned vocational expert for the ALJ hearing, also testified. (*Id.* at 540-45.) He determined that McClain's past work as a dietary aide should be classified as an unskilled position with medium exertion. (*Id.* at 541.) Based on McClain's current impediments, Szollosy found that she could no longer perform her past work, however, he did note several work opportunities were available for her. (*Id.* at 542.) Szollosy stated, for example, that a Surveillance System Monitor and call-out operator are both sedentary positions which required low levels of exertion, in a moderate environment, and would only need simple skill sets. (*Id.*)

### C. ALJ Findings

The Social Security Administration uses a five-step sequential claim evaluation process to determine whether an individual is disabled:

> [The Commissioner] determines first whether an individual is currently engaged in substantial gainful activity. If that individual is engaged in substantial gainful activity, he will be found not disabled regardless of the medical findings. 20 C.F.R. § 404.1520(b). If an individual is found not to be engaged in substantial gainful activity, the [Commissioner] will determine whether the medical evidence indicates that the claimant suffers from a severe impairment. 20 C.F.R. § 404.1520(c). If the [Commissioner] determines that the claimant suffers from a severe impairment, the [Commissioner] will next determine whether the impairment meets or equals a list of impairments in Appendix I of subpart P of Regulations No. 4 of the Code of Regulations. 20 C.F.R. § 404.1520(d). If the individual meets or equals the list of impairments, the claimant will be found disabled. If he does not, the [Commissioner] must determine if the individual is capable of performing in his past relevant work considering his severe impairment. 20 C.F.R. § 404.1520(e). If the [Commissioner] determines that the individual is not capable of performing his past relevant work, then he must determine whether, considering the claimant's age, education, past work experience and residual functional capacity, he is capable of performing other work which exists in the national economy. 20 C.F.R. § 404.1520(f).

*West v. Astrue*, C.A. No. 07-158, 2009 WL 2611224, at *5 (D. Del. August 26, 2009) (quoting *Brewster v. Heckler*, 786 F.2d 581, 583-84 (3d Cir. 1986)). Based on the factual evidence and the testimony of McClain and Szollosy, the ALJ determined that McClain was not disabled and, therefore, was not eligible for DIB. (D.I. 12 at 21.) The ALJ's Findings are summarized as follows:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since May 10, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: Multiple Sclerosis, obesity and depression (20 CFR

404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d). 404.1525, 404.1526).

5. [T]he claimant has the residual functional capacity to physically perform unskilled sedentary work as defined in 20 CFR 404.1567(a) except she is subject to the following non-exertional limitations: 1) claimant is able to frequently but not constantly perform pushing/pulling activities with her upper extremities; 2) claimant is able to perform all postural movements occasionally but is precluded from climbing ladder/rope and scaffold; and 3) Claimant is to avoid concentrated exposure to temperature extremes, hazards and fumes, odors, dusts, gasses and poor ventilation.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on November 5, 1971 and was 33 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 10, 2005 through the date of this decision (20 CFR 404.1520(g)).

(*Id.* at 13-21.)

## III. STANDARD OF REVIEW

### A. Motion for Summary Judgment

Both parties filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the non-moving party[,]' but [refraining from] weighing the evidence or making credibility determinations." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation omitted). If the court determines that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).

### B. Review of the ALJ's Findings

The court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence does not mean a large or a considerable amount of evidence. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Rather, it has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Credibility determinations are the province of the ALJ, and should be disturbed on review only if they are not supported by substantial evidence. *Pysher v. Apfel*, Civ.

A. No. 00-1309, 2001 WL 793305, at *2 (E.D. Pa. July 11, 2001) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 973 (3d Cir. 1983)). Thus, the inquiry is not whether the court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). In social security cases, this substantial evidence standard applies to motions for summary judgment brought pursuant to Fed. R. Civ. P. 56(c). *See Woody v. Sec. of the Dep't of Health & Human Serv.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

## IV. DISCUSSION

In this appeal, McClain's primary argument is that the ALJ failed to account for some of her non-exceptional limitations when determining the proper residual functional capacity ("RFC"). McClain also alleges that the only way to find for defendant is by relying on information not contained in the ALJ decision. The Commissioner argues that the ALJ's finding was reasonable because it was based on substantial evidence in support of its position. After considering the parties' arguments and submissions, and the applicable law, the court concludes that the ALJ properly found that there are a significant number of jobs in the national economy that McClain is capable of performing.

### A. Residual Functioning Capacity

A RFC assessment helps determine a claimant's capability of future employment, either at her previous employment or other work. 20 C.F.R. § 404.1560. According to the Social Security Administration, RFC is:

> [A]n assessment of an individual's ability to do sustained
> work-related physical and mental activities in a work setting
> on a regular and continuing basis. A 'regular and continuing
> basis' means 8 hours a day, for 5 days a week, or an
> equivalent work schedule . . . . The RFC assessment must
> first identify the individual's functional limitations or
> restrictions and assess his or her work-related abilities on a
> function-by-function basis, . . .

SSR 96-8p.[4] The Commissioner has the final responsibility for determining a claimant's RFC and will not give special significance to other opinions on issues reserved to him. 20 C.F.R. § 404.1527(e)(2), (3) (2011). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of her own limitations. *Id.* § 404.1545(a). Failure to evaluate all relevant evidence may result in a reviewing court remanding the decision to determine if a claimant is entitled to disability benefits. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981). When making findings, the ALJ must also explicitly state what evidence was relied on and what evidence was rejected. *Id.* at 705. "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000).

Here, the ALJ analyzed the opinions of McClain's treating neurologists, Drs. Dopler and Baumann, her primary care physician, Dr. Romano, and the opinion of Dr. Keyes, a physician who examined McClain on behalf of Delaware Disability Determination Service. The ALJ's ultimate conclusion is consistent with the opinions of Drs. Dopler, Baumann, and Keyes. The ALJ determined that McClain had the following

---

[4] *Available at* http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-08-di-01.html.

non-exertional limitations: (1) limited amount of pushing and pulling with upper extremities; (2) preclusion from climbing a scaffold and ladder or rope; and (3) avoidance of extreme temperatures, fumes, or other areas of poor ventilation. (D.I. 12 at 17.) McClain claims that the following limitations were improperly disregarded by the ALJ: moderate impairment in relating to others; moderate impairment in coping with pressures of ordinary work; limitations in her ability to maintain regular attendance in a normal work setting; difficulty sustaining work performance; problems meeting ordinary quality and productions norms; difficulty carrying out instructions under ordinary supervision; and problems with memory loss secondary to her multiple sclerosis.

Here, however, the ALJ did adequately review all of McClain's impairments. First, the ALJ noted that McClain's severe impairment of obesity could aggravate other impairments and limit the type of work she may be able to perform. (*Id.* at 14.) The ALJ also gave "particular consideration" to McClain's MS. (*Id.*) The ALJ was consistent with both of McClain's treating neurologists when determining her physical impairments. During physical examinations, both doctors did not find any visual, speech, motor, or gait problems. (*Id.* at 221, 441.) Dr. Baumann noted that McClain reported periodic numbness in her lower extremities. (*Id.* at 441.) The ALJ's determination of a sedentary work environment with the additional physical limitations, however, was reasonable in addressing McClain's fluctuating numbness in her lower extremities and accurately reflected the limitations noted by both neurologists.

The ALJ analyzed whether McClain satisfied the "paragraph B" criteria to determine if she met the listed mental impairments. (*Id.* at 15.) A mental impairment must meet two of the following factors to be deemed to have met paragraph B: marked

restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.[5] (*Id.* at 15-16.) The ALJ determined that McClain's mental impairments did not meet any factors in paragraph B. (*Id.* at 14-17.)

The ALJ concluded that McClain had only mild restriction in her activities of daily living. (*Id.* at 16.) McClain testified that she is able to care for her personal needs, can drive short distances, is able to maintain the household with the aide of her family, and has appropriate hygiene and grooming. (*Id.* at 17-19.) The ALJ only found mild difficulties in McClain's social functioning. (*Id.* at 16.) The ALJ relied heavily on Dr. Keyes, who noted that McClain's social skills were limited, but still adequate. (*Id.* at 272-73.) Many of the non-exertional limitations that McClain argues are wrongfully omitted, fit into the ALJ's paragraph B determination, including: moderate impairment in relating to others; moderate impairment in coping with pressures of ordinary work; and difficulty carrying out instructions under ordinary supervision. But as admitted by McClain, Dr. Keyes determined that these impairments only met the level of moderate or mild. (*Id.* at 275-76.) To be a marked limitation, the limitation must be more than moderate, which none of these limitations were. (*Id.* at 15-16.) Thus, the ALJ correctly determined that McClain did have some difficulties with social functioning, but not at a level that exceeded moderate.

---

[5] "A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." (*Id.* at 16.)

13

With regard to McClain's concentration, persistence, or pace, the ALJ found moderate difficulties. (*Id.* at 16.) The ALJ appeared to give McClain every benefit of the doubt when relying on her testimony that she had difficulty reading even simple instructions. (*Id.*) The ALJ also relied on evaluations that found McClain has normal mental alertness, intact remote and intermediate memory, low average working memory, and adequate attention and concentration. (*Id.*) These moderate limitations were taken into consideration and were consistent with the ALJ's determination that unskilled work was within McClain's RFC. (*Id.*) Finally, the ALJ found no episodes of decompensation by McClain. (*Id.*) Therefore, the ALJ collectively found that paragraph B was not met as none of the factors were at the level of marked or repeated. (*Id.*) This determination is consistent with all of the doctors' reports. Dr. Bauman reported that she had a normal mental status, which was confirmed by Dr. Keyes. (*Id.* at 221, 441.) While all doctors noted that McClain suffered from depression and was prescribed medication for treatment, they all diagnosed her condition as stable. (*Id.* at 185-208, 411-12, 486.)

The ALJ's findings, which discredited Dr. Romano's opinion and certain descriptions by McClain concerning the effects of her symptoms, are reasonable. Dr. Romano diagnosed McClain with profound fatigue, memory loss, numbness, and weakness. He was the sole physician to label her as disabled. (*Id.* at 19.) The ALJ did not accord Dr. Romano's opinion significant weight because her conclusions are inconsistent with her treatment notes and other doctors' observations. For example, Dr. Romano found that McClain could frequently lift ten pounds and occasionally carry such

weight, and had no limitations in interpersonal relations or ability to handle stress. (*Id.*)

The ALJ also reasonably discounted McClain's testimony in light of her inconsistent statements. While McClain claims numbness in her fingers, she can manipulate buttons, maneuver a zipper, hold a toothbrush, and hold a knife and fork with rest periods. (D.I. 12 at 18.) Even though McClain states that her energy is very limited, she says she is able to drive short distances, shop with her husband, and attend church services. (*Id.* at 19.) Though McClain claims difficulty with concentration and following simple instructions, she pays her bills, counts change, and handles her bank accounts. (*Id.*) McClain also states that she suffers from anxiety and panic attacks, yet all treating doctors, including Dr. Romano, indicated that medications have stabilized any mental impairments. (*Id.*) These inconsistencies support the ALJ's findings regarding McClain's testimony and her RFC.

### B. Hypothetical to Vocational Expert

"When there are both exertional and non-exertional impairments, the Commissioner must rely upon some other supporting evidence." *Washington v. Heckler*, 756 F.2d 959, 967 (3d Cir. 1985). Here, the ALJ considered the testimony of Szollosy, a vocational expert, regarding McClain's capabilities. (D.I. 12 at 540.) McClain argues, however, that the ALJ did not adequately portray each individual impairment and limitation in the hypothetical posed to the vocational expert. When posing hypothetical questions, "the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis added). "Limitations that are medically supported

and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response." *Burns v. Barhardt*, 312 F.3d 113, 123 (3d Cir. 2002). The ALJ is not allowed to use his own expertise to reject any evidence in the record. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

Since the non-exertional limitations purported by McClain were reasonably discounted by the ALJ, the hypothetical questions submitted to the vocational expert included only limitations credibly established by the record. As noted previously herein, McClain's impairments were described as mild to moderate by Dr. Keyes and the other physicians. Thus, her limitations were never credibly established as substantial. As a result, the ALJ was entitled to rely upon the vocational expert's testimony as substantial evidence in the step five analysis.

### C. The "Chenery doctrine"

Federal courts must review ALJ's decision based only on the facts and findings included in the decision, as required by the "Chenery doctrine." *See SEC v. Chenery*, 332 U.S. 194, 196 (1946). In the Third Circuit, this principal is recognized in social security cases. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n.7 (3d Cir. 2001). When the Commissioner fails to adequately include his reasoning for accepting or rejecting evidence, it "leave[s] us to wonder whether he considered and rejected them, considered and discounted them, or failed to consider them at all." *Id.* McClain argues that this court is unable to find in favor of the Commissioner based solely on the facts and findings of the ALJ.

16

Here, the ALJ relied on all applicable and reliable evidence, including the medical opinions of her treating physicians, testimony elicited at the hearing and documents completed by McClain. The ALJ provided reasonable explanations for the weight given to the evidence of Dr. Romano and McClain. The ALJ reasonably applied all credible evidence when determining a RFC that considered McClain's impairments. The ALJ particularly noted that the MS and obesity would restrict the length and type of work she could do in the future. (D.I. 12 at 14.) She not only restricted her RFC to sedentary work, but also imposed extra limitations that specifically addressed McClain's restrictions arising from MS and obesity. The ALJ also considered McClain's moderate difficulties with concentration and memory by limiting the field of future work to unskilled labor. (*Id.* at 16.) Thus, based solely on the facts and findings of the ALJ, the court finds that the Commissioner's decision was reasonable and based upon substantial evidence.

## V. CONCLUSION

For the aforementioned reasons, the court concludes that the ALJ's denial of DIB is based on substantial evidence. Accordingly, the court denies McClain's motion for summary judgment and grants the Commissioner's motion for summary judgment.

Dated: July 7, 2011

CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TANYA A. McCLAIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-317-GMS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

For the reasons set forth in Memorandum issued in this action today;

IT IS HEREBY ORDERED this 7th day of July, 2011 that the plaintiff's motion for summary judgment (D.I. 14.) is DENIED, and the defendant's motion for summary judgment (D.I. 16.) Is GRANTED.

_____
CHIEF, UNITED STATES DISTRICT JUDGE